STATE of Missouri, Respondent,

v.

Bobby D. CREASON, Appellant.

No. WD 45837.

Missouri Court of Appeals, Western District.

Jan. 12, 1993.

James J. Wheeler, Keytesville, for appellant.

William L. Webster, Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before LOWENSTEIN, C.J., and SHANGLER and HANNA, JJ.

HANNA, Judge.

The defendant, Bobby D. Creason, was charged by an information with committing the crime of sodomy[1] with his stepdaughter on February 21, 1991. At the time the victim was eight years of age. The jury trial took place in Macon County on a change of venue. The following evidence was developed at trial.

Mary K. Creason married the defendant in November of 1988. Mrs. Creason had two children from her prior marriage: the victim who was nine years old at the time of the trial, and a son who was a year older. The defendant and his wife lived in a mobile home park in Columbia, then moved in with his parents in Huntsville. The family next stayed at a farm near Higbee, Missouri and from there moved to a house inside the city limits of Higbee. Mrs. Creason's nephew was also living with them at that time.

On February 21, 1992, the victim testified that she came home from school at approximately 2:25 p.m. and went to her bedroom. Both her brother and cousin were in the house but the defendant told them to go outside. The defendant told his stepdaughter to go to the bathroom and after she entered the bathroom he pulled her pants down around her ankles and touched her "privacy" with " [h]is tongue."

Mrs. Creason's testimony was she got off work a few minutes early and when she arrived home she noticed that the two boys were in the yard playing but her daughter was not in sight. Most of the house was dark; only the kitchen and the bathroom had lights on. She saw the defendant standing inside the bathroom and holding the victim up in the air. She was wearing a skirt but her pants were pulled down to her ankles.

Mrs. Creason asked the defendant what he was doing and at first he did not answer. Later he said he was "washing her." Mrs. Creason testified that the defendant was not responsible for bathing or washing the daughter who bathed and washed herself, except for her hair.

Mrs. Creason immediately took her daughter and the boys to the car and asked her what had happened. She told her mother that the defendant "was licking her ... private area." Mrs. Creason went back into the house, called the chief of police in Higbee and then drove to his house. The police chief sent her to City Hall where she reported the incident to the police chief, a detective with the Randolph County Sheriff's Department and Kelli Heuer, a Division of Family Services investigator. The victim told the police chief, "that Bobby had her on the hamper licking her privacy." She also told Mrs. Heuer that "her Dad had licked her privacy." According to Mrs. Heuer, the victim was "very upset with what had happened and was crying."

There was testimony of a prior incident that occurred when they lived on a farm near Higbee, Missouri. Mrs. Creason found her daughter in the boys' bedroom with the lights off and the defendant sitting on one of the beds with her daughter standing by a window. When she asked the defendant what they were doing he replied that he was looking for something.

Mrs. Creason got her daughter alone and inquired as to what had taken place. She told her mother the defendant was trying to get her pants off and then related an earlier incident when the defendant "took her in [their] bedroom and made her sit on the bed, spread her legs out" and "was sticking his finger in and out of her." When confronted with this accusation by Mrs. Creason, the defendant explained that he was putting vaseline on her.

■ For defendant's first point, he argues that the evidence was insufficient to sustain a finding of guilt to the charge of sodomy because the nine-year-old victim's testimony was "so contradictory and in conflict with physical facts, surrounding circumstances and common experience" that the evidence needed corroboration.

---

**1.** All statutory citations are to RSMo Supp.1986 unless otherwise indicated.

The defendant summarizes these "uncorroborated contradictions" as follows: the defendant is charged with having committed a sexual act in a bathroom in a house with open and unlocked doors, with children in the yard, at the exact time his wife and the mother was expected home and while the defendant was fully clothed. He argues the inconsistency in the mother's and the victim's testimony in that the victim says she was on a wicker clothes hamper and Mrs. Creason said she was being held in the air at the bathroom entrance, by the waist, in what appeared to be intercourse. For a sexual act to be performed, or attempted, under these circumstances, he argues, is not believable because of the physical facts.

■ Corroboration testimony of a victim is required where the victim's testimony is so contradictory and in conflict with the physical facts, surrounding circumstances and common experience, that its validity is rendered doubtful. *State v. Harris*, 620 S.W.2d 349, 353 (Mo. banc 1981). The defendant is unable to point to any inconsistencies in the victim's trial testimony. He does argue that her trial testimony differed from her statements to Chief of Police Boggs and to Division of Family Services' Worker Heuer. He notes that she told Chief Boggs that the defendant "had her on the hamper licking her privacy," and that she said that the defendant "had never done this before." Chief Boggs did not recall the victim ever mentioning the fact that the defendant, some months earlier, had inserted his finger in her vagina. Mrs. Heuer's report stated that Charlotte "denied any other bad touches beside the oral sex."

■ All of these charged inconsistencies or contradictions refer to matters extraneous to the victim's trial testimony. The corroboration requirement is triggered only when the inconsistencies arise in the victim's trial testimony and not inconsistencies with her out-of-court statements. *State v. Patterson*, 806 S.W.2d 518, 519 (Mo.App.1991). Further, the requirement of corroboration does not apply where the inconsistencies are between the victim's

statements and those of other witnesses. *State v. Sladek*, 835 S.W.2d 308, 310 (Mo. banc 1992); *State v. Davis*, 824 S.W.2d 936, 941 (Mo.App.1992). At best, the defendant has only shown contradictions in the testimony between the victim's trial testimony and her out-of-court statements and some inconsistencies between the victim's statements and that of her mother's trial testimony. In all instances, they were adequately explained to the jury. When or in what manner the victim was positioned when the defendant committed the act of sodomy upon her was not a subject that was raised either on direct or cross-examination. There was a clothes hamper in the corner of the bathroom. Although she told Chief Boggs that the defendant had "never done this before" the jury was free to reason that she was referring to an act of oral sex; the prior incident where the defendant inserted his finger in her vagina, being different. There was evidence that the victim was not asked by Chief Boggs about any other incidents.

Mrs. Heuer's report that the victim had not experienced any other bad touches was explained by Mrs. Heuer in that she meant "[t]hat day besides the oral sex" and that she had not asked about, or discussed, any other sexual instances involving the defendant.

■ Nevertheless, the victim's testimony was corroborated by her prompt complaint, first to her mother and then to Chief Boggs and to Mrs. Heuer. Evidence of the victim's prompt complaint is corroborative evidence of a sexual assault. *Harris*, 620 S.W.2d at 354. Additionally, Mrs. Heuer testified that the victim "was very upset with what had happened and was crying." This corroborates and establishes that the act occurred. *State v. Wickizer*, 641 S.W.2d 849, 851 (Mo.App.1982).

The defendant's argument is nothing more than an assertion that the state's testimony was not credible. Such a contention was for the jury to resolve. The testimony of the victim was straightforward and did not contain contradictions or inconsistencies in her trial testimony, or for that matter, in her out-of-court statements to

her mother, Chief Boggs or the social worker. We find corroboration was unnecessary as the prosecutrix's testimony was sufficient to support the verdict of guilty.

■ The defendant next objects to the assistant prosecutor's questions to Mr. Robinson, the defendant's character witness. On direct examination of defendant's employer, the defense attorney asked these questions and received these answers.

Q. Will you tell the jury what you know about [defendant's] reputation for being a dependable law-abiding person?

A. Bobby has always been a good worker. I could depend on him being there on time, staying until the job was done.

Q. Have you at any time heard him accused of any criminal activity of any kind or nature?

A. I never have.

Following this exchange, the assistant prosecuting attorney framed six questions with this introduction:

Q: Mr. Robinson, when you formed this opinion of [the defendant] as being law-abiding, *were you aware* of the *fact* or rumors of the fact that he had (emphasis added)

—assaulted his [ten-year-old stepson] by striking him with a belt?

—struck [another child] with a belt

—struck [ten-year-old stepson] with a piece of pipe

—struck [another child] with a wire

—some twenty years earlier inflicted punishment on his natural son ... by breaking his collar bone

—that some twenty to twenty-five years ago molested his own natural daughter

All of the above questions commenced with " ... were you aware of the fact...." Each question was answered in the negative.

The defendant objected to these questions because, among other deficiencies, they lacked a good faith basis and were prejudicial because they were offered for the purpose of proving the fact that the offenses had been committed and not to test the credibility of the witness. We

believe the questions are susceptible to criticism for the manner in which they were framed and the failure of the prosecutor to supply a reasonable basis to support the questions.

■ The state has a right to cross-examine the defendant's character witness relative to the defendant's prior arrests or accusations of specific misconduct. *State v. Crow*, 17 S.W. 745, 107 Mo. 341 (Mo.1891) was the first court decision to admit testimony on cross-examination to determine the credibility of the witness and sources of information upon which the knowledge of defendant's character was obtained. At that time, the court noted that when a defendant puts his character in issue he subjects "himself to such disaster as might result therefrom." *Id.* 17 S.W. at 746. Such cross-examination has as its purpose to test the trustworthiness, knowledge and good faith of the witness. *State v. Siems*, 535 S.W.2d 261, 264 (Mo.App.1976). It tests the witness's familiarity with the reputation of the defendant and the stringency of the standard on which that reputation was earned. *State v. Sweet*, 796 S.W.2d 607, 614 (Mo. banc 1990), *cert. denied*, — U.S. —, 111 S.Ct. 1339, 113 L.Ed.2d 270 (1991).

■ On the other hand, there are limits to the scope of cross-examination. The prosecutor transcends those limits when the questions are asked merely for the purpose of improperly showing other crimes or for the purpose of going into collateral details. *Siems*, 535 S.W.2d at 264. There is a general requirement of fairness in cross-examination, and if there is no reasonable basis on which to base such a cross-examination, it should not be made. *State v. Hicks*, 64 S.W.2d 287, 288 (Mo.1933).

Early on Missouri courts recognized the requirement that the question must have a good faith or reasonable basis. In *State v. Willard*, 192 S.W. 437, 440 (Mo.1917), the court held " ... such cross-examination ought to be done in good faith, and the crimes inquired about ought not to be apocryphal existing alone in the fertile fancy of

a public prosecutor." Also, in *State v. Hicks,* 64 S.W.2d at 288, the court said a "[p]rosecuting attorney should be fair in cross-examination of this kind, and, if they have no reasonable basis on which to base such a cross-examination, it should not be made." *See also, State v. Myers,* 579 S.W.2d 828, 830 (Mo.App.1979).

In this case, the defense attorney's objections were sufficient to cause the court to hold a hearing to determine the factual basis for the two questions directed to the child abuse of his son or the sexual molestation allegation of his daughter. In response, the state made no explanation to the court or made any effort to show that it had a reasonable basis to believe the defendant was responsible for these acts. A search of the transcript reveals that during the pre-trial conference, the assistant prosecuting attorney remarked to the judge that there was another criminal case which was a four count felony charge against this defendant arising out of child abuse against two of the children who were the subject matter of the questions. Although this explanation was not made to the court at the time the objections were made, it provides the reasonable basis for these questions. A criminal charge, which carries with it certain safeguards of good cause that the crime occurred, supplies a reasonable basis for the questions asked of the witness as they related to those two individuals.

This is not the situation with respect to the questions dealing with the charge of sexual molestation of his daughter some 20–25 years earlier or the physical abuse allegation of his son, which was charged to have happened 20 years before. The state notes that during the pre-trial conference the defense counsel raised the charge of the molestation of the defendant's daughter in a motion in limine believing the state might attempt to introduce that evidence in its case in chief. Therefore, the state argues, defense counsel's awareness of the charge translates into a reasonable basis for the question.[2] We disagree, particular-

ly in light of defense counsel's statement that he could find no basis for the allegation. In the final analysis, there was no explanation by the prosecutor concerning the basis of her information of the charge the defendant broke his son's collar bone or any circumstances surrounding such an incident nor of the sexual molestation charge.

The court should not presume that the prosecutor has acted in bad faith, without some evidence of bad faith conduct. *State v. Thomas,* 526 S.W.2d 893, 896 (Mo.App.1975). When that good faith presumption is challenged and there is nothing in the record to support the question, the court can no longer indulge the presumption. In this case, the defense counsel, in his objection, challenged the assistant prosecutor's good faith. In order to avoid serious prejudice to the defendant, the state must request a hearing outside the presence of the jury. The court should take up the issue of whether the cross-examiner had information warranting a reasonable belief that the fact is as implied by the question. This does not call for proof beyond a reasonable doubt, but the court must satisfy itself "that counsel was not merely taking a random shot at a reputation imprudently exposed or asking a groundless question...." *Michelson v. U.S.,* 335 U.S. 469, 481, 69 S.Ct. 213, 221, 93 L.Ed. 168 (1948). Lacking the basis for the question, the objection should be sustained.

How the question is framed is a factor to be considered when determining whether the question is to test the witness's credibility or has, as its purpose, to improperly show other crimes or collateral details. *State v. Carroll,* 188 S.W.2d 22, 23–24 (Mo.1945), *State v. Cooper,* 271 S.W. 471, 473 (Mo.1925); *Myers,* 579 S.W.2d at 830.

Couching the question in terms of personal knowledge has been criticized and prohibited. *See* Wanda Ellen Wakefield, *Cross–Examination of Character Wit-*

---

**2.** A witness's affirmative answer that he knows of the rumors supplies the good faith basis for

the question. *State v. Richardson,* 364 S.W.2d 552, 555 (Mo.1963).

*nesses For Accused With Reference to Particular Acts or Crimes–Modern State Rules,* 13 A.L.R. 4th 796, 812–13 (1982). "Were you aware" and "did you know" requests personal knowledge of the witness and implies the matter inquired of as a fact when this introduction is followed by "... of the fact...." The preferred method of asking the question is, "have you heard...." The inquiry must be directed to rumors or reports concerning the defendant's character, *Siems,* 535 S.W.2d at 264, and not be of the "don't you know" type. *State v. Carroll,* 188 S.W.2d at 23–24. Thus, the form of the question about other acts of misconduct is important. *Siems,* 535 S.W.2d at 264.

The questions asked by the assistant prosecutor identified the subject matter, the child abuse, contained therein as a fact. Such an inquiry violates the allowable purpose of cross-examination. *Hawley v. Merritt,* 452 S.W.2d 604, 610 (Mo.App.1970). It is improper and sometimes prejudicial "to phrase questions on cross-examination ... so as to assume as fact matters of which there is no evidence." *Id.* " [C]ross-examination should not be permitted to be used to covertly convey to the minds of jurors suspicion and prejudice as to a defendant by a recital as facts of supposed matters not appearing in the evidence and wholly outside of the case." *State v. Selle,* 367 S.W.2d 522, 530 (Mo.1963) (quoting *Pittman v. United States,* 42 F.2d 793, 797 (8th Cir.1930)). " [I]t is the general rule, which we have no intention of modifying, that such cross-examination should refer to 'rumors' and 'reports' of fact of misconduct—derogatory in character—rather than to the witness' personal knowledge of particular facts." *State v. Carroll,* 188 S.W.2d at 24. The defendant's complaint is well taken. These questions were asked in such a manner as to imply the facts had been established, that is, that the child abuses were a fact.

In this case, the prosecutor's questions transcended the limits of cross-examination of defendant's character witness. The form of the question phrased in a manner to elicit personal knowledge and imply the subject matter of the question to be a fact

and lacking a hearing to determine their reasonable basis, compels a retrial.

There are other issues the parties have briefed to this court but we are satisfied that the points which have been addressed by this court will be sufficient to prevent a problem in the event the case is retried.

The judgment of conviction is reversed and the case is remanded for a new trial.

All concur.