**STATE of Missouri, Respondent,**

v.

**Thomas J. WATERS, Jr., Appellant.**

**No. WD 46083.**

Missouri Court of Appeals,
Western District.

May 18, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 29, 1993.

**414**

Patrick J. Berrigan, Asst. Appellate Defender, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Rudolph R. Rhodes, IV, Asst. Atty. Gen., Jefferson City, for respondent.

Before KENNEDY, P.J., and BERREY and SPINDEN, JJ.

KENNEDY, Presiding Judge.

Defendant was convicted upon a jury trial of forcible sodomy, Section 566.060 RSMo Supp.1990. Defendant was sentenced as a prior and persistent offender to 30 years' imprisonment. He has appealed.

At approximately 10 o'clock the evening of August 29, 1991, 21–year–old Jerra was walking along the sidewalk at 15th and Charlotte Streets in Kansas City. She had been with a male friend named James, but she had gotten out of James's car after an argument with him and she was walking along the sidewalk. She lived in Kansas, and was some distance from home.

Defendant, driving a pickup truck, stopped for a red light at the intersection of 15th and Charlotte. Seeing Jerra, he asked Jerra if she needed a ride. Jerra said she did, and got into defendant's truck. She did not know defendant and had never seen him before.

Defendant offered Jerra a beer which she accepted and drank. She gave defendant directions to her residence in Kansas, and defendant drove in that direction.

When Jerra realized defendant did not take the correct exit off the interstate, she grabbed the steering wheel. Defendant forced her into submission, removed her shorts and underpants, fastened her hands behind her with grey duct tape and transported her to a remote rural spot. There, after applying some kind of lubricant to her vaginal and anal areas, defendant repeatedly thrust into Jerra's vagina and into her anus an iron bar, a wood stick, and a hammer handle, and performed cunnilingus on her.

Defendant then taped her ankles together with the duct tape, and covered her eyes with the same material. He took her to a residence in Independence, later identified as defendant's apartment. He laid her on the bed and there performed cunnilingus on her again.

He left the apartment. Jerra was able to get the tape off her eyes and her ankles. She saw defendant outside in his truck. Her hands still taped behind her back, she seized a pellet rifle lying on a chest and, still naked from the waist down, ran from the apartment. She tried to shoot defendant with the rifle, but it was not loaded. She tried to hit him with it as he pursued her. She dropped the gun and ran for a house across the street, defendant still in pursuit. As she reached the door of the house, defendant threw the rifle at her, breaking the glass on the door. Jerra plunged through the broken glass. The occupant of the house, a Mrs. Pese, called the Independence police. The time was now about 1:30 a.m. The police came promptly. Jerra was taken by ambulance to the Independence Regional Health Center for treatment and examination.

From the information Jerra gave to the police, including her assailant's description, her description of the truck, and the house to which her assailant had taken her and from which she had escaped, the police suspected defendant. A few hours later, they arrested defendant in his truck as he returned to his residence.

Defendant's first point is that there is not sufficient evidence to support the conviction, and he is entitled to an acquittal as a matter of law. He says Jerra's testimony was "fraught with inconsistencies,

lacked credibility and violated the rule of corroboration to the extent that such evidence was insufficient as a matter of law to support a finding of guilt." He cites *State v. Kuzma*, 751 S.W.2d 54 (Mo.App. 1987), to support his position. Defendant points to a number of Jerra's prior statements which were inconsistent with her trial testimony. At trial, she said there was no penile penetration by defendant; she had earlier made statements to the police and to the examining physician, and to a nurse, that defendant's assault upon her included penile penetration. She said at trial she got into defendant's truck voluntarily at defendant's invitation; she had told the police after the incident that defendant forced her into his truck with a gun. In explaining why she was walking at the intersection of 15th and Charlotte Streets, she said at trial she had been with one man earlier in the evening and had parted company with him after a quarrel; in her statement to police after the incident, she identified her male companion by a different name.

Jerra was confronted with the prior inconsistent statements mentioned in the preceding paragraph. Some she admitted, some she denied. As to those she denied, the defense proceeded to prove them by independent evidence. The jury had before them the alleged inconsistent statements. They were well equipped to assess the witness's credibility. As to the main points of Jerra's testimony, i.e., the defendant's forcing her into submission and the attack she underwent, Jerra's testimony was clear and direct. The jury had Jerra before them, heard her testimony, and heard the inconsistent statements she had allegedly made. We would not in the face of this record presume to dismiss the testimony of a witness whom the jury found to be credible on essential points.

Furthermore, the jury did not convict upon Jerra's uncorroborated testimony. Her evidence was to some extent corroborated by Mrs. Pese, to whose house she ran for help, in a hysterical state, naked from the waist down, with her hands tied with duct tape, and with the defendant in pursuit. A recent case from this court, *State*

*v. Creason*, 847 S.W.2d 482 (Mo.App.1993), found sufficient corroboration for the victim's account of a crime from surrounding circumstances, stating:

> Nevertheless, the victim's testimony was corroborated by her prompt complaint, first to her mother and then to Chief Boggs and to Mrs. Heurer. Evidence of the victim's prompt complaint is corroborative evidence of a sexual assault. Additionally, Mrs. Heurer testified that the victim "was very upset with what had happened and was crying." This corroborates and establishes that the act occurred. (citations omitted)

*Creason*, 847 S.W.2d at 485.

Defendant's first point, therefore, is disallowed.

■ Defendant complains of the exclusion of certain evidence. That was the testimony of a chemist from the regional crime lab that the vaginal slide taken after the incident showed the presence of spermatozoa. The amount of spermatozoa indicated either a recent ejaculation of a very small amount of spermatozoa, or that the spermatozoa had been deposited between 18 and 48 hours earlier.

There was no error in the exclusion of this testimony. There was nothing to identify the spermatozoa as defendant's. Defendant says it tended to prove penile penetration by defendant—and, from that, defendant claims it tends to prove consensual intercourse. There was really no claim of penile penetration. Jerra denied it. Defendant did not testify. The claim of penile penetration came only from Jerra's pretrial statements. The penile penetration issue was a collateral issue. The court allowed proof of the prior inconsistent statements. He was within his discretion in disallowing the additional proof of the presence of spermatozoa. Certainly proof that defendant made penile penetration would not go the extra length, contended for by defendant, that the penetration was with Jerra's consent.

Defendant's second point is disallowed.

Defendant complains of the reasonable doubt instruction. The instruction was patterned after MAI–CR 3rd 302.04. Defendant says it does not comply with *Cage v.*

*Louisiana,* 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990). The instruction has been repeatedly approved against the same argument the defendant makes here. *See State v. Ervin,* 835 S.W.2d 905 (Mo. banc 1992), cert. denied, —— U.S. ——, 113 S.Ct. 1368, 122 L.Ed.2d 746 (1993); *State v. Blankenship,* 830 S.W.2d 1 (Mo. banc 1992).

Defendant's third point is thus disallowed.

■ For his final point, defendant challenges the admission of items seized from his truck, statements he made to the police, and a photo lineup, all taken after defendant was placed under arrest. At a pretrial hearing, defendant argued the police did not have probable cause to arrest defendant, making the evidence inadmissible under *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Defense counsel renewed his objection when each piece of evidence was offered and admitted at trial. We hold the arrest was legal and the evidence admissible, since there was probable cause to believe the defendant had committed a felony at the time he was arrested.

At the hospital, the victim gave a description of her attacker and his truck to the police. She described the truck as a red Dodge pickup, 1970's model with white trim and/or a white bumper. The suspect was described as a white male, 35–38 years of age, 5'8" tall, 220 pounds, heavy build, blond hair, fair complexion, wearing a black T-shirt and blue jeans.

Officer Cutsworth of the Independence Police Department undertook surveillance of the house from which Jerra ran for several hours. Early the next morning he noticed a white over red 1970's pickup turn onto the block, slow down in front of the residence, and continue on. The vehicle returned a minute or two later, slowed in front of the house, and left. Three minutes later the truck was back. It slowed in front of the house and then left. Officer Cutsworth moved his patrol car, and encountered the truck beginning to enter an alley behind the house. He ordered the driver to stop. The driver, a blond white male, offered a license identifying him as Tommy Waters. After speaking with his sergeant, Officer Cutsworth arrested Mr. Waters.

The description given by Jerra of her attacker and the truck he was driving, coupled with the fact that defendant, who matched the description, was found in the area of the crime driving a similar truck a few hours after the incident, would have been sufficient for Officer Cutsworth to stop the truck and arrest the driver. *State v. Allen,* 684 S.W.2d 417 (Mo.App.1984); *State v. Whitley,* 743 S.W.2d 482 (Mo.App. 1987). The suspicious way in which defendant was acting, by passing the house several times, slowing down, and returning from a different direction, also supports the finding that there was probable cause to stop the truck, and once the driver was identified, arrest him. Finally, the suspicions of the police that the defendant was involved, given Jerra's description, their familiarity with defendant, and the fact that he lived at the address where the crime occurred, are also relevant to a finding of probable cause. *State v. Abbott,* 571 S.W.2d 809 (Mo.App.1978).

Defendant's final point is disallowed.

Judgment affirmed.

All concur.