**STATE of Missouri, Plaintiff–
Respondent,**

v.

**Douglas J. DALE, Appellant–
Defendant.**

**No. 25608.**

Missouri Court of Appeals,
Southern District,
Division Two.

March 1, 2004.

Ellen H. Flottman, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Richard A. Starnes, Asst. Atty. Gen., Jefferson City, for respondent.

NANCY STEFFEN RAHMEYER, Chief Judge.

Douglas J. Dale ("Defendant") was convicted by a jury for voluntary manslaughter, a violation of Section 565.023.1,[1] and armed criminal action, a violation of Section 571.015.1, in connection with the death of Jodi McAllister ("McAllister"). The trial court followed the recommendation of the jury and sentenced Defendant to fifteen years imprisonment for the voluntary manslaughter and ten years imprisonment for the armed criminal action with the sentences to be served concurrently. Defendant timely filed this appeal in which he alleges that the trial court erred in denying his motion for a mistrial. We affirm.

Defendant does not contest the sufficiency of the evidence. Viewing the evidence in the light most favorable to the verdict, the following facts were adduced at trial. Defendant and McAllister were a divorced couple who, in spite of their past violent relationship, lived together in Ozark, Missouri. On the weekend of August 4, 2001, Defendant acquired a black sports car for McAllister to test drive. McAllister took the sports car that Saturday morning to go shopping and to secretly meet Anthony Perkins ("Perkins"). McAllister picked up Perkins and they went shopping in Branson, Missouri. Later in the day, they went to the Lake of the Ozarks to acquire the drug, Ecstasy. McAllister took Perkins to her brother's home after acquiring the Ecstasy. Both McAllister and Perkins passed out after using the Ecstasy and stayed that night at her brother's home.

On the morning of August 5, 2001, Defendant reported McAllister missing, and the Ozark Police filed a missing person's report. McAllister called Defendant later that day to tell him she was coming home and Defendant notified the police that McAllister was returning. The Ozark Police returned to McAllister's residence to conclude their investigation of the missing person report. The couple was arguing when the police arrived so the couple was separated for individual interviews. McAllister told police the relationship was failing and she did not come home because she did not want to. Defendant told police that he was concerned about McAllister's drug use and that he suspected she was cheating on him. Defendant and McAllister then began arguing about who would have to leave the house with Defendant eventually deciding he would be the one to leave. Defendant's father was present during this dispute and left with the sports car that McAllister had driven that weekend.

Around 10:15 p.m. that night, a neighbor, who lived next door to Defendant and McAllister, returned home and observed the black sports car parked in front of McAllister's house. Another neighbor, Carol Gardner ("Gardner"), was awakened at approximately 3:00 or 3:30 a.m., by McAllister and Defendant's dogs barking outside, which she found unusual because she had never seen the dogs outside at that time of night. Gardner testified she was also awakened by a loud noise coming from inside McAllister's house around 4:00 a.m. It is this last statement by Gardner about the loud noise around 4:00 a.m. that Defendant claims warranted a mistrial.

Later that morning, at approximately 7:30 a.m., the Nixa, Missouri police and

---

1. All references to statutes are to RSMo 2000 unless otherwise indicated.

fire departments and an ambulance crew were dispatched to the home of Defendant's parents to respond to a report of an attempted suicide by drug overdose. The Nixa Police arrived first to secure the scene and observed the black sports car parked outside the home. After the police secured the scene, the ambulance crew found Defendant had mixed Xanax and alcohol at approximately 10:30 p.m. the previous evening. Defendant was lethargic but responsive and told the police and ambulance crew, "It's not worth it without her," and "I killed [McAllister]." He then told them that McAllister was at home in the hallway. Defendant's mother provided the police with the address of the house in Ozark.

Ozark Police were dispatched to McAllister's residence and secured the scene. The police observed no signs of forced entry at the house and inside found McAllister's body lying in the hallway with a bullet hole in her forehead. A paramedic with the ambulance crew observed that the blood on the carpet "did not appear to be fresh blood at all" because it had coagulated.

Defendant was arrested that morning at his parent's home. While the police were arresting Defendant, Defendant's mother found a gun inside her home. It was later determined that this was the gun used to kill McAllister. A jury subsequently found Defendant guilty of voluntary manslaughter and armed criminal action. This appeal follows.

Defendant's sole point on appeal alleges that the trial court erred in overruling a motion for a mistrial after the State failed to disclose Gardner's testimony regarding the loud noise she heard in the early morning of McAllister's death. The additional information concerning the loud noise was not contained in Gardner's initial statement, which was disclosed to Defendant.

Defendant alleges that the State's discovery rule violation of failing to disclose Gardner's additional statement prevented Defendant from having the opportunity to adequately prepare for trial. Defendant claims that Gardner's testimony about the loud noise at 3:30 or 4:00 a.m. on the night of the murder prejudiced the jury in that the jury would be convinced that Defendant appeared callous, with the implication that McAllister lay on the floor bleeding for hours.

■ We first note that Defendant's point was not properly preserved for appeal. Defendant's counsel did not object to Gardner's testimony that she heard a loud noise at 4:00 a.m. the morning McAllister was killed when the testimony was offered in direct examination. Instead, Defendant's counsel attempted to impeach Gardner on cross-examination because she had not included information about a loud noise in her prior written statement. Only after the State completed its redirect examination of Gardner and she was excused by the court did Defendant's counsel request a mistrial. Defendant's counsel argued that Gardner's additional testimony was discoverable and that the State had violated rules of discovery by withholding this statement from Defendant. Defendant did not ask that Gardner's testimony be stricken or that any caution concerning the testimony be given to the jury.

An objection is untimely when it is made after the question has been asked and answered and, in the absence of a motion to strike the answer, the ruling of the trial court on the objection is not preserved for appellate review. *State v. Malone*, 951 S.W.2d 725, 729 (Mo.App. W.D.1997). Although Defendant's point is not properly preserved for appellate review, we may review his point at our discretion for plain error where the result would be a "manifest injustice or miscarriage of justice."

Rule 30.20.[2] Plain error review should be used sparingly and does not justify a review of every trial error that was not properly preserved. *State v. Phillips,* 939 S.W.2d 502, 505–06 (Mo.App. W.D.1997). Defendant faces a greater burden under plain error review than when asserting prejudicial error. *State v. Deckard,* 18 S.W.3d 495, 497 (Mo.App. S.D.2000). Defendant must not only demonstrate prejudicial error but that the error so substantially affected his rights that a manifest injustice or a miscarriage of justice will result if the error is left uncorrected. *Id.*

■ Defendant fails to establish how the lack of disclosure resulted in a manifest injustice. "Claims of surprise requiring a mistrial must be supported by some reasoned basis for the existence of actual prejudice." *State v. Johnston,* 957 S.W.2d 734, 749 (Mo. banc 1997). Defendant does not present an argument on appeal of what he would have done differently during the trial or how the outcome would have been affected if Gardner's testimony had been disclosed prior to trial.

Defendant's claim that Gardner's testimony was prejudicial because it made the Defendant appear callous and uncaring for allowing McAllister to lie on the floor and bleed for hours instead of calling the police immediately after she was shot was cumulative of virtually all the other testimony regarding the events of that night. The jury had already heard from Defendant's own trial counsel that some time had passed between McAllister's death and when the police were called. Defendant's counsel told the jury in his opening statement that Defendant passed out after McAllister was shot and that the police were not called immediately after he woke up but after he went to his parent's house in Nixa. A paramedic testified that he ob-

served McAllister had been dead for an "extended period" when the body was discovered because the blood on the floor had coagulated, her skin was discolored, and the blood in her body had pooled to the areas closest to the floor. The black sports car was at the murder scene as early as 10:15 p.m. Defendant's parents indicated Defendant had mixed the Xanax and alcohol at approximately 10:30 p.m. the previous evening. The implication in that statement certainly could have been that Defendant attempted suicide after he killed McAllister. Finally, the loud noise was not said to be the sound of a gunshot. It was simply a loud noise.

Defendant fails to demonstrate how the lack of disclosure of Gardner's additional testimony resulted in a manifest injustice because Defendant has not shown how he was prejudiced in any way. Defendant's point is denied. The judgment of the trial court is affirmed.

SHRUM, J., and BATES, J., concur.