STATE of Missouri, Plaintiff–Respondent,

v.

Charles HARDY, Defendant–Appellant.

No. 27257.

Missouri Court of Appeals,
Southern District,
Division One.

Aug. 4, 2006.

Irene C. Karns, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Karen L. Kramer, Asst. Atty. Gen., Jefferson City, for respondent.

NANCY STEFFEN RAHMEYER, Presiding Judge.

Charles Hardy ("Appellant") was convicted of first-degree murder and sentenced to a term of life without the eligibility for probation or parole. Appellant raises four points on appeal, none of which challenge the sufficiency of the evidence. We affirm.

We review the evidence in the light most favorable to the verdict. The uncontested evidence is that Appellant shot John Belfield with a rifle from approximately 25 to 45 feet away on January 22, 2004, as Belfield was leaving a friend's house. What is disputed are the incidents which occurred prior to the shooting. Appellant did not testify at trial but claimed to the police officers when he was arrested that he was afraid of Belfield because Belfield had beaten and threatened him earlier in the evening and was carrying a knife out of the house. The earlier exchanges between Appellant and Belfield stemmed from Appellant's actions toward a married woman that Appellant claimed to be involved with romantically.

The woman, Rhonda Stabener, complained to Belfield and another friend, Jonathon Zimmerman, of Appellant's continued harassment of her and her friend, Belinda Smith. Belfield and Zimmerman agreed to speak to Appellant, went to his house, and claimed to have advised Appellant to leave Stabener and Smith alone. Belfield and Appellant got into a fight and Belfield was stabbed with a butter knife; he received a small, insignificant cut. While Belfield and Zimmerman were at Smith's house, which was next to Appellant's, Appellant called her three times. Each time, either Belfield or Zimmerman told Appellant to leave Stabener and Smith alone. Later, as Belfield, Zimmerman, and Stabener left Smith's house, Belfield and Stabener were shot.

Appellant returned to Smith's house two or three times after the shooting and was asked to leave each time. He did not

appear frightened or remorseful. He removed a towel, which had been placed on Stabener, saying, "She isn't going to die. She doesn't have a heart." He then threw the towel back at her. While in jail, Appellant reiterated his feelings toward Stabener with a letter to Smith, which included the following comments: "I hope Rhonda finds happiness now, one man dead, one probably either going to be executed or end up spending the rest of his life in prison. It tears me apart knowing one so young died defending the honor of one that has no honor."

The police discovered a knife next to Belfield; however, no witness saw him with a knife at the time of the shooting, nor did anyone initially see it on the ground next to Belfield after the shooting. The knife did not match any knives from Smith's house, but did match knives from Appellant's house. The knife appeared to have been wiped clean of fingerprints.

Appellant seeks plain error review in all four of his points. In his first two points, he claims the trial court should have declared a mistrial *sua sponte* due to a question asked, but not objected to, during the cross-examination of a defense witness. Appellant's third point claims the trial court should have advised jurors to disregard the prosecutor's statement during closing arguments regarding the mental state necessary for a conviction on a second-degree murder charge. Appellant's final point claims the trial court should have declared a mistrial *sua sponte* after evidence was admitted that Appellant had mixed alcohol and medication on the day of the incident.

■ We review a claim for plain error review only if the error affects a substantial right that results in manifest injustice or a miscarriage of justice. *State v. Smith*, 979 S.W.2d 215, 217 (Mo.App. S.D. 1998). Plain error review should be used sparingly and may not be used to justify a review of every point that has not been otherwise preserved for appellate review. *State v. Roberts*, 948 S.W.2d 577, 592 (Mo. banc 1997). The defendant bears the burden of demonstrating a manifest injustice. *State v. Tokar*, 918 S.W.2d 753, 769–770 (Mo. banc 1996).

■ The testimony from which Appellant bases his first two points came from Appellant's witness, Jerry Kline, who was called to rebut Smith's testimony that she did not hear any words spoken outside when Belfield went out the door that night. Kline, who was not a friend of Appellant, was asked by the prosecutor if he knew whether Appellant was a member of the Aryan Brotherhood. Kline answered that he did not. Appellant claims an implication was made clear to the jury that Appellant was a member of the Aryan Brotherhood even though Kline did not confirm the fact. Appellant argues that the question was not related to any other evidence in the case and was simply asked in order to cast aspersions on Appellant's character; he also notes that he had not presented evidence impugning the character of the victim or otherwise put his own character at issue. In addition to being improper character evidence, Appellant claims the suggestion that he belonged to a hate group irreparably damaged his effort to show that he acted in self-defense.

The State candidly admits that it does not appear that the prosecutor's question would have lead to relevant evidence, had it been answered in the affirmative and actually elicited evidence that Appellant was in a gang. *E.g. State v. Driscoll*, 55 S.W.3d 350, 354–55 (Mo. banc 2001) (finding abuse of discretion when the trial court admitted evidence of defendant's membership in Aryan Brotherhood when it was not "logically and legally relevant to establish the defendant's guilt of the crime

charged"). Even if the question would not lead to relevant evidence, the State argues the trial court did not plainly err in failing to *sua sponte* declare a mistrial. We agree.

■ A mistrial is a drastic remedy which a trial court should grant *sua sponte* only in exceptional circumstances. *State v. O'Haver*, 33 S.W.3d 555, 561 (Mo.App. W.D.2000). The jury was instructed that a question is not evidence and that the jury is presumed to follow the trial court's instructions. We expect a jury to abide by the trial court's written instruction, MAI–CR 3d 302.02, and to not assume as true any fact solely because it is included in or suggested by a question asked of a witness. *State v. McClanahan*, 954 S.W.2d 476, 478 n. 2 (Mo.App. W.D.1997). In this case, the prosecution did not receive an affirmative answer. It is as though the question was not answered. The general precept is that when an improper question is asked but not answered, no prejudice occurs. *Id.* at 478.

Even though the question propounded during cross-examination was inappropriate, we find no prejudice to Appellant and no manifest injustice. It is not readily apparent on the face of Appellant's claim that, but for the prosecutor's asking the question, the outcome of Appellant's case would have been different. *See State v. Barriner*, 34 S.W.3d 139, 150 (Mo. banc 2000) (noting the distinction between evidence-specific and outcome-determinative prejudice). The evidence against Appellant was overwhelming.

First, the only issue at trial was Appellant's claim of self-defense. All of the evidence indicated that Appellant fired a high-powered rifle at Belfield and at Stabener from 25 to 45 feet. If Appellant thought the victim had a knife, it was a kitchen knife that matched the knives in Appellant's home and the victim was not within striking distance of Appellant. The evidence further indicated that Appellant would not have been able to see a knife in the evening had Belfield been carrying one. Additionally, although Appellant testified that Belfield kicked in his door, there was no sign that Appellant's door was kicked in. Appellant's actions in repeatedly visiting the crime scene after the shooting indicated that Appellant was not repentant. He was unconcerned at best, callous at its worst. The history of Appellant's relationship with Stabener as well as the letter written by Appellant while he was in jail provided the mental state for which the jury could reach the verdict of murder in the first degree. Finally, the disputed question was a single question with no further reference to a membership in the Aryan Brotherhood at any other time. When the body of evidence establishing Appellant's guilt is overwhelming, the error is rendered harmless. *McClanahan*, 954 S.W.2d at 480. We do not find a manifest injustice. Points I and II are denied.

■ In his third point, Appellant claims the comments of the prosecutor in closing argument regarding the mental state for a conviction on a second-degree murder charge was error. Appellant was charged with first-degree murder; however, the jurors were instructed on second-degree murder and voluntary manslaughter. In his closing argument, the prosecutor stated "But if you find, no, he's not guilty of murder in the first degree, he didn't deliberate or he didn't—it was just the spur of the moment, he didn't deliberate at all on it, then you go to [the verdict director for second-degree murder]." Appellant claims that the words "spur of the moment" are an inaccurate statement of the law concerning the mental state for murder in the second degree because the correct mental state is to knowingly cause the death of

another person or cause the death of another while trying to cause serious physical injury to him. *See* section 565.021.1(1)[1]; *State v. Thomas,* 161 S.W.3d 377, 380 (Mo. banc 2005). Appellant argues that because the verdict shows that the jury found Appellant guilty of deliberating before shooting the victim, they may have concluded that he acted after cool reflection simply because the prosecutor's interpretation of the mental state for second-degree murder was equivalent of impulsive conduct. Appellant claims the choice given the jury was a false dichotomy between "cool reflection" and "spur of the moment conduct."

Again, keeping in mind our standard of review for plain error review, we decline to review Appellant's claim of error. The jury convicted Appellant of first-degree murder, thus, they found that Appellant acted knowingly to cause the death of another person after deliberation upon the matter. Section 565.020.1; *State v. Hudson,* 154 S.W.3d 426, 429 (Mo.App. S.D. 2005). The prosecutor's argument in its totality does not misstate the law. The crucial difference between first and second-degree murder is that first-degree murder requires deliberation, which is defined as "cool reflection for any length of time no matter how brief." Section 565.002(3). It is clear that the phrase "spur of the moment" used in argument was referring to whether or not the jury believed Appellant deliberated. We find no trial court error in failing to *sua sponte* advise the jury to disregard the prosecutor's closing argument. Point III is denied.

In his last point, Appellant claims the trial court clearly erred in not *sua sponte* declaring a mistrial when the State adduced evidence that Appellant mixed alcohol with medication on the day of the shooting. Smith was asked if she had seen Appellant earlier on the day of the shooting. She responded that she saw him after he received his medication from the noon mail. At approximately three or four that afternoon, his eyes were so foggy that she asked him how many pills he had taken. She further testified that it was a common occurrence for Appellant to take vicodin and valium and drink "on them."

Appellant claims that the solicited answers constituted improper evidence of misconduct that did not have a legitimate tendency to establish his guilt of murdering the victim. Again, as there were no objections to the questions, we review for plain error and find none. In its context, the evidence that the witness saw Appellant had received his medication and appeared to have consumed alcohol with it was simply introduced to provide a background for the contacts among all of the parties. Furthermore, the evidence indicates Appellant had a prescription for the vicodin. Although drinking alcohol with his medication may be contraindicated medically, we cannot say that it was introduced with the purpose of showing prior "bad acts" of Appellant. The trial court did not plainly err in failing to *sua sponte* declare a mistrial. Point IV is denied.

The judgment is affirmed.

PARRISH, J., and SHRUM, J., concur.

---

1. All references to statutes are to RSMo 2000, unless otherwise specified.