**STATE of Missouri, Plaintiff–Respondent,**

v.

**Jeffrey W. WHITE, Defendant–Appellant.**

No. 27756.

Missouri Court of Appeals,
Southern District,
Division One.

Aug. 20, 2007.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jayne T. Woods, Jefferson City, for respondent.

Nancy A. McKerrow, Columbia, for appellant.

NANCY STEFFEN RAHMEYER, Presiding Judge.

Jeffrey W. White ("Appellant") appeals his conviction for statutory rape in the first degree, a violation of section 566.032.[1] He was found guilty in a jury trial and sentenced as a prior offender to a term of twenty years in the custody of the Missouri Department of Corrections. Appellant raises two points on appeal, neither challenges the sufficiency of the evidence. We will address only Appellant's first point, which is a claim of evidentiary error. For the reasons discussed herein, we reverse and remand for a new trial.

---

**1.** All references to statutes are to RSMo 2000, and all rule references are to Missouri Court Rules (2007), unless otherwise specified.

Appellant was charged as a prior offender in Crawford County Circuit Court with first-degree statutory rape. The victim, K.M., who was thirteen years old at the time of the incident, claimed Appellant and Harold Helms raped her one evening during a gathering of friends, which took place at the home of Harold Helms. K.M. did not immediately leave the party or disclose the rape at that time, but confided the events to a friend, her sister and her mother approximately seven or eight months later. K.M. testified about the events at trial, but there was conflicting testimony from several witnesses regarding the events of that night. None of the witnesses, including K.M., claimed that anyone was using methamphetamine on the night in question.

During the trial, Appellant offered the testimony of Harold Helms to refute K.M.'s account of the night in question. The prosecutor asked Mr. Helms during cross-examination:

[Prosecutor]: Was [Appellant] drinking?

[Helms]: Yes.

[Prosecutor]: Was he using anything else?

[Helms]: No not to my knowledge.

[Prosecutor]: Was he using specifically methamphetamine?

[Helms]: No.

[Prosecutor]: You sound kind of surprised that I would ask that, are you?

[Helms]: Yes.

[Prosecutor]: Well in fact are you aware that [Appellant] is serving ten years for manufacturing or distributing methamphetamine right now.

[Helms]: No I wasn't aware of that. I know nothing about [Appellant].

After Mr. Helms answered, Appellant's counsel objected and requested a sidebar during which the following exchange occurred:

[Defense]: I want to know what the hell that was about.

[Prosecutor]: He said he wasn't using, acted surprised, I asked him, he said he was surprised, so I have a right to cross[-]examine.

Court: You have a right to cross[-]examine him.

[Defense]: You asked him about methamphetamine, there was nothing about methamphetamine in this deal, and he didn't talk about the character of this guy, he said he never knew him.

[Prosecutor]: I asked him if he was using. He acted surprised when I asked that. I asked him if he was using meth.

. . . .

[Defense]: And he said no, not to his knowledge.

[Prosecutor]: And then he acted surprised and I asked him if he was surprised that I asked that, and he said yes, I wanted to know if he knew that. I'm entitled to ask that on cross.

[Defense]: I don't think he is but that's alright.

Court: Proceed.

When the prosecutor later cross-examined another defense witness, Michael Bocardo, the following exchange occurred:

[Prosecutor]: Was [Appellant] using any methamphetamine?

[Bocardo]: No.

[Prosecutor]: Does he typically use methamphetamine?

[Bocardo]: I don't think so.

[Prosecutor]: Would you know?

[Bocardo]: No.

[Prosecutor]: You['re] his friend aren't you?

[Defense]: Your Honor I am going to object again. May we approach?

Later, during the cross-examination of another defense witness, Jamie (Counts) Davis, the prosecutor conducted a similar line of questioning:

[Prosecutor]: You and [Appellant] were friends weren't you?

[Davis]: Yes.

[Prosecutor]: Was he using methamphetamine that night?

[Davis]: I don't know. I don't believe so.

[Prosecutor]: Could he have been?

[Davis]: I don't believe so.

[Prosecutor]: You don't believe so, why not?

[Defense]: Objection[.] Answered.

The court overruled both of defense counsel's objections.

■ In his first point, Appellant claims that the trial court erred by allowing the prosecutor to ask the witnesses about Appellant's drug use and incarceration. Appellant claims that the trial court's failure to sustain the objections Appellant made or to rebuke the prosecutor, or to give a curative instruction, violated Appellant's "right to due process, to be tried only for the crime for which he was charged, and to a fair trial before a fair and impartial jury."

■ Ordinarily, " '[w]e review trial court decisions regarding the admissibility of evidence for prejudice, not mere error, and will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial.' " *State v. Johnson,* 161 S.W.3d 920, 924 (Mo.App. S.D.2005) (*quoting State v. Dunn,* 21 S.W.3d 77, 85 (Mo. App. S.D.2000)). It is clear that a party must make a timely objection to preserve an issue for appellate review. *State v. Dale,* 128 S.W.3d 180, 182 (Mo.App. S.D.

2004). Whether Appellant properly preserved his objection to the initial comments of the prosecutor is an issue we need not decide. The parties have analyzed the comments under a plain error standard of review and under these circumstances, this Court may review for plain error.

■ We will conduct such a review only if the error affects a substantial right that results in manifest injustice or a miscarriage of justice. *State v. Smith,* 979 S.W.2d 215, 217 (Mo.App. S.D.1998). Plain error review should be "used sparingly and may not be used to justify a review of every point that has not been otherwise preserved for appellate review." *State v. Roberts,* 948 S.W.2d 577, 592 (Mo. banc 1997). It is the defendant who bears the burden of demonstrating a manifest injustice. *State v. Tokar,* 918 S.W.2d 753, 769–770 (Mo. banc 1996).

■ Evidence of other crimes, when not properly related to the cause on trial, violates a criminal defendant's right to be tried only for the crime with which he is charged. *State v. Sladek,* 835 S.W.2d 308, 311 (Mo. banc 1992). The well-established rule is that, generally, proof of the accused's prior convictions is inadmissible, "unless such proof has some legitimate tendency to directly establish the defendant's guilt of the charge for which he is on trial." *State v. Shilkett,* 356 Mo. 1081, 204 S.W.2d 920, 922–23 (1947). Evidence of other crimes may be admitted if it tends to establish motive, intent, the absence of mistake or accident, a common plan or scheme embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other, the identity of the person charged with the commission of the crime on trial, a signature modus operandi, or a continuation of a sequence of events that assist in painting a coherent picture of the crime.

*Johnson,* 161 S.W.3d at 924–25. Evidence of other crimes is admissible only if its probative value outweighs its prejudicial effect. *State v. Bernard,* 849 S.W.2d 10, 13 (Mo. banc 1993).

This principle barring the admission of prior convictions is meant to prevent juries from convicting the accused simply because he is perceived to be a "bad or evil man." *State v. Davis,* 211 S.W.3d 86, 87 (Mo. banc 2006). Evidence of other crimes is so highly prejudicial to the accused that it should be received only when there is a "strict necessity," *State v. Collins,* 669 S.W.2d 933, 936 (Mo. banc 1984), and only after it is subject to " 'rigid scrutiny.' " *Davis,* 211 S.W.3d at 88 (*quoting Sladek,* 835 S.W.2d at 311).

The fact that Appellant was serving a ten-year prison sentence for methamphetamine distribution at the time of trial had no legitimate tendency to establish his guilt on the first-degree statutory rape charge. Furthermore, Appellant did not put his character in issue as he did not testify nor did he call Mr. Helms, Mr. Bocardo, or Ms. Davis as character witnesses. *See State v. Brooks,* 675 S.W.2d 53, 58 (Mo.App. S.D.1984) (stating that a prosecutor may not attack defendant's character when it was not put into issue by the accused). Though the scope and extent of cross-examination in criminal cases rests largely in the discretion of the trial judge, *State v. Gardner,* 8 S.W.3d 66, 72 (Mo. banc 1999), evidence of other crimes, if erroneously admitted, is presumed to be prejudicial. *Brooks,* 675 S.W.2d at 59. Admitting evidence of Appellant's drug conviction was highly prejudicial and erroneously admitted.

Appellant contends the prejudice is evident by the repeated references to methamphetamine even though no one, not even K.M., ever testified that methamphetamine was used and the additional inappropriate questions of the prosecutor deprived Appellant of a fair trial. In reviewing the transcript, the prejudice of the error is apparent as the prosecutor pushed the limits of appropriate cross-examination during this trial.

In earlier testimony, when the prosecutor asked how long Mr. Helms spoke with defense counsel, Mr. Helms responded "[m]aybe a minute or two." The prosecutor then challenged Mr. Helms, asking, "well actually wasn't he out there talking to the witnesses for more like forty minutes?" The prosecutor again implied that defense counsel coached Mr. Bocardo during the following exchange:

[Prosecutor]: Did [defense counsel] talk to you about what had already been testified to and what your testimony would be?

[Bocardo]: Yes.

[Prosecutor]: You understand that he's not supposed to talk to you about what has already been testified to? You understand that? But he did didn't he?

[Bocardo]: Yeah.

Defense counsel objected and the following sidebar occurred:

[Defense]: This is irrelevant and immaterial. I did not disclose anything about the testimony to anybody. I told him the kind of questions I was going to ask him.

[Prosecutor]: Well that's not what he said.

Court: Well I'm inclined to believe [defense counsel].

[Prosecutor]: So am I.

Court: I don't believe a thing the witness is saying. I believe you [defense counsel]. I do not believe [Mr. Bocardo].

[Prosecutor]: As do I. That's not the point [defense counsel].

Court: We're clear on that. Proceed please.

The prosecutor repeated the same compound question, "[d]id you talk to [defense counsel] about what had been testified to already and what you were going to testify to?," to which Mr. Bocardo answered "Yeah." Although the prosecutor claimed that he believed defense counsel did not disclose the previous testimony, he left the distinct impression with the jury with his compound, trick questions, that defense counsel had done what he was not supposed to do—disclose what other witnesses had testified to. The prosecutor implied that defense counsel improperly informed the witness what had been testified to rather than having properly spoken to the witness about what the witness would say. The jury was left with the impression that defense counsel acted improperly.

The prosecutor also relied upon inadmissible hearsay to discredit two of Appellant's witnesses. During the cross-examination of Mr. Helms, when the prosecutor asked "[s]pecifically, didn't you tell the officer when they asked if you knew [Appellant] that you had only been in his company a couple of times before the night in question?," Mr. Helms responded, "No." During his cross-examination of Danielle Richardson, the prosecutor asked "[i]sn't it true, ma['a]m that you made a statement to a friend named Tasha Parker that you didn't think Harold did this but even if you knew that he did you wouldn't say anything against him?," to which she replied "No that's not true." These statements allegedly made by the witnesses were not admissible, even under the provisions of

section 491.074,[2] in that there was absolutely no evidence to prove that the statements were made, nor did Appellant have an opportunity to cross-examine the unnamed officer or Tasha Parker because they were not called to testify at the trial. *See State v. Blankenship,* 830 S.W.2d 1, 12 (Mo. banc 1992).

■ There is a general requirement of fairness in cross-examination—the prosecutor must have a reasonable basis for his questioning. *State v. Creason,* 847 S.W.2d 482, 486 (Mo.App. W.D.1993). We cannot find any reasonable basis for asking about Appellant's drug conviction. The State relies on *State v. Hardy,* 197 S.W.3d 250 (Mo.App. S.D.2006), for the proposition that when an improper question is asked, but not answered, generally, no prejudice occurs. In response to the prosecutor's question about whether Mr. Helms was aware of Appellant's prior methamphetamine distribution conviction, Mr. Helms responded, "No I wasn't aware of that. I know nothing about [Appellant]." The State argues that Appellant was not prejudiced because the prosecutor did not receive an affirmative answer to his question, so it is as though the question was not answered.

*Hardy* is distinguishable from the present case in four respects. First, in *Hardy* the prosecutor asked the witness whether he knew Hardy was a member of the Aryan Brotherhood and the witness responded that he did not. *Id.* at 252. When the prosecutor asked Mr. Helms whether he was aware of Appellant's prior drug distribution conviction he responded, "No I was not aware of that. I know nothing about [Appellant]." The statement from the prosecutor that Appellant

**2.** Section 491.074 states: "Notwithstanding any other provisions of law to the contrary, a prior inconsistent statement of any witness testifying in the trial of a criminal offense shall be received as substantive evidence, and the party offering the prior inconsistent statement may argue the truth of such statement." Section 491.074.

was serving time had the force of a factual statement and was not really a question. Second, the prosecutor in *Hardy* did not repeatedly inject questions of the accused's involvement with the Aryan Brotherhood in the trial, unlike the prosecutor in the present case who repeatedly emphasized Appellant's alleged involvement with illicit drugs. Third, when this Court concluded in *Hardy* that it was not apparent that the outcome of the case would have been different absent the prosecutor's question about the accused's involvement with the Aryan Brotherhood, it noted that the evidence to convict Appellant in that case was "overwhelming." *Id.* at 253. In the present case, the State's case was based wholly on the somewhat contradictory testimony of K.M. and her mother. It is difficult to say that there was "overwhelming" evidence of Appellant's guilt when even the prosecutor noted in his closing argument, "[i]t's not an easy case and you have a difficult task ahead of you and I don't envy any of you." Finally, the critical difference between *Hardy* and the present case is that membership in the Aryan Nation is not a criminal offense; whereas, distribution of methamphetamine obviously is. When considered in this light, the prejudice injected by the prosecutor's questions becomes clear.

We find that by the trial court's failure to sustain defense counsel's objection, which would have allowed the defense to ask for some remedial relief, Appellant was prejudiced, a manifest injustice resulted, and Appellant was denied a fair trial.

The judgment of the trial court is reversed and the cause remanded for a new trial.

PARRISH, J., concurs.

SCOTT, J., concurs in result in separate opinion.

DANIEL E. SCOTT, Judge, concurring in result.

The State asked three defense witnesses if Appellant was using methamphetamine ("meth") on the night in question, although there was no evidence that anyone was doing so. Each witness answered negatively. The State then asked each witness more meth questions—*e.g.*, did Appellant "typically" use meth; could he could have done so without the witness's knowledge; why did the witness believe Appellant was not using meth. The State even told one witness—and thus the jury—that Appellant currently was serving a ten-year prison term for manufacturing or distributing meth.

Meth and meth use were not relevant to the statutory rape charge or Appellant's character, which was not at issue. Meth's effect on Appellant's ability to perceive and recall was irrelevant because he did not testify. Since he was not a witness, Appellant's crimes and convictions could not be used to impeach him.

As the principal opinion notes, there is a general requirement of fairness in cross-examination and limits to its scope. *State v. Creason,* 847 S.W.2d 482, 486–87 (Mo. App.1993). Our courts long have required a good-faith basis for questions with negative implications such as here. *State v. Primers,* 971 S.W.2d 922, 931 (Mo.App. 1998), *citing Creason,* 847 S.W.2d at 486 *and State v. Willard,* 192 S.W. 437, 440 (Mo.1917). At oral argument, this Court invited the State to defend the propriety of this questioning on any basis. I believe the State effectively conceded it could not do so, arguing instead that any prejudice was insufficient to justify plain error relief.

Albeit in the context of an *uninvited* reference to other crimes, this Court has considered five factors in analyzing the prejudicial effect of such evidence:

1) whether the statement was, in fact, voluntary and unresponsive, or whether the prosecutor deliberately attempted to elicit the information; 2) whether the statement was singular and isolated, and whether it was emphasized or magnified by the prosecutor; 3) whether the remarks were vague and indefinite, or whether they made specific reference to crimes committed by the defendant; 4) whether the court promptly sustained defense counsel's objection, and instructed the jury to disregard the volunteered statement; and 5) whether in view of the other evidence presented and the strength of the state's case, it appeared that the comment played a decisive role in the determination of guilt.

*State v. Immekus,* 28 S.W.3d 421, 431 (Mo. App.2000), *citing State v. Smith,* 934 S.W.2d 318, 320–21 (Mo.App.1996). Applying similar factors here: 1) the State deliberately asked about Appellant's meth use, conviction, and imprisonment; 2) three different witnesses each were asked multiple meth questions; 3) the remarks were specific about meth use, and specific about Appellant's conviction and imprisonment for meth manufacture or distribution (*i.e.,* not mere possession or personal use); and 4) objections were not sustained (and sometimes not properly made) and the jury was not told to disregard.

As to the fifth *Immekus/Smith* factor, the strength of the State's case is a prime factor in deciding if trial error resulted in manifest injustice or miscarriage of justice. *Primers,* 971 S.W.2d at 931. This trial record reveals "a submissible, but fragile case of guilt" (*Id.*), into which the State injected Appellant's prison sentence and repeated inferences linking Appellant to meth use, with no apparent evidentiary or legal justification therefor.

I concur, for these reasons, in this Court's decision to reverse and remand. I do not necessarily agree with, and thus respectfully decline to join, the principal opinion's criticisms of other questions or comments by the prosecutor, nor do I consider those necessary to the result we reach today.