STATE of Missouri, Respondent,

v.

David DeWaine THOMAS, Appellant.

No. 61665.

Supreme Court of Missouri,
En Banc.

March 11, 1980.

As Modified On Court's Own Motion
On Rehearing Denied April 8, 1980.

Chris Hoberock, on appeal, Ewing, Ewing, Carter, McBeth & Smith, Ray N. Fowler, Nevada, for appellant.

John Ashcroft, Atty. Gen., Paul Robert Otto, Mary C. P. Pincus, Asst. Attys. Gen., Jefferson City, for respondent.

HIGGINS, Judge.

David DeWaine Thomas was convicted by a jury of first degree murder committed while in the perpetration of robbery, § 559.-007, Laws 1975, and his punishment was fixed at life imprisonment. Defendant waived his right to file a motion for new trial, and judgment was entered pursuant to the verdict. Defendant was granted leave to file notice of appeal out of time by the court of appeals and the case was transferred prior to opinion. At issue are the admissibility of defendant's confession and the constitution of the jury. Affirmed.

Sufficiency of evidence to sustain the conviction is not challenged, and the record demonstrates evidence from which a jury reasonably could find: Just before midnight on May 15, 1977, defendant and three others entered the home of Phillip Frazier and his wife in rural Cedar County to steal money. After Phillip and his wife were bound and their eyes taped, the four intruders spent more than an hour loading spoils into their car. Fearing later detection, they forced Mr. Frazier into their car and took him to Caplinger Mills, a remote area in Cedar County. He was dragged from the car and placed on the ground. Defendant poured gasoline over him and fired two shotgun blasts at him, after which each of the other three shot him as well. The body was ignited and the group left.

On May 17, 1977, defendant and one of the others were arrested in Sikeston, Missouri, en route to Kentucky. Because of crowded conditions in the Cedar County jail, defendant was taken to Dade County and held there until June 8 when he was taken to Cedar County. On that day, counsel was appointed for him and he was arraigned. During the approximately three week confinement in Dade County, defendant was interviewed three times.

On May 21, at defendant's request, Sheriff Morlan of Cedar County came to the Dade County jail. *Miranda* rights were read to defendant and he made an exculpatory statement.

On May 25, again at defendant's request, Sheriff Morlan, Deputy Sheriff LaRew and Highway Patrol Trooper Mike Woods came to Dade County for a second interview. Defendant's rights were read to him and he admitted to having been at the Frazier residence on the night of the murder but denied involvement in the robbery or the killing.

On June 1, 1977, defendant was charged with the first degree murder of Phillip Frazier.

On June 7, 1977, again following a request by defendant, Sheriff Morlan returned to question defendant for a third time. This time the Cedar County Prosecutor accompanied him but was never introduced to defendant as the prosecutor. Defendant was advised of his rights and he signed a waiver form. Questioning was by the sheriff except for nine clarifying questions by the prosecutor. Forty-five minutes into the interview, Sheriff Morlan discovered he had not turned on the tape recorder and asked defendant if he would go through the interview a second time. He

agreed, his rights were read again, and he gave a full statement of his involvement in the robbery and killing, the transcript of which was later challenged at a pretrial suppression hearing. The motion to suppress was overruled. The statement was admitted at trial without objection.

Appellant asserts three points on this appeal, review of which is narrowed by his decision not to file a motion for new trial. Such a strategy prejudiced the scope of the review of his case, and the circumstances of his decision are set out to demonstrate that he affirmatively, knowingly, and voluntarily waived his right to file the motion for new trial necessary to preservation of his contentions on appeal.

Three or four days after the trial, it was explained to appellant by his attorney that he had a right to a motion for new trial and that if he so desired, one would be prepared and filed on his behalf. When appellant's decision not to file was communicated to the court, this colloquy took place:

THE COURT: State of Missouri against David Dewaine Thomas.

Dewaine, when the jury came in on the 26th of January you were granted thirty days to file a Motion for New Trial and the sentencing was deferred until the Motion for New Trial, if any, was filed.

Your attorney has since told me that you don't want to file a Motion for New Trial.

DEFT. THOMAS: That's right, not at this time.

THE COURT: Not at this time? You realize that if you don't file one within that thirty day period that was granted you won't have any opportunity to file a Motion for a New Trial, do you understand that?

DEFT. THOMAS: Yeah. I can still file an appeal later on.

THE COURT: You can file an appeal, but if there were any legal errors in the trial of the case, many of them are waived by failing to file a Motion for a New Trial.

DEFT. THOMAS: Well I said I was going to waive it, so I guess I'll go ahead.

THE COURT: You understand that many, if not all, legal errors in the trial, if there were any legal errors, will be waived by not filing a Motion for a New Trial, you understand that?

DEFT. THOMAS: Yes.

THE COURT: Understanding that do you still want to waive the filing of a Motion for New Trial, is that right?

DEFT. THOMAS: That's right.

THE COURT: Have you gone over that with your attorney, Mr. Fowler?

DEFT. THOMAS: Yes, sir.

THE COURT: Has anybody urged you to waive your motion for new trial?

DEFT. THOMAS: No sir.

THE COURT: Nobody has put or given you any promises or applied any force or duress to get you to do that, have they?

DEFT. THOMAS: No, sir.

THE COURT: Tell me why it is that you have decided not to file a Motion for a New Trial?

DEFT. THOMAS: Well, one thing, if you don't fight it, it is easier to make parole.

THE COURT: Who told you that?

DEFT. THOMAS: Well it is just my experience from being down there before, that's what I gathered. Also, my behavior and stuff while I've been here in jail and with the recommendations of good behavior, and I can go out to the college and stuff there too.

THE COURT: Who told you that?

DEFT. THOMAS: I know that from being there before too.

THE COURT: That is not anything that the prosecuting attorney or the judge has told you or the sheriff or anybody?

DEFT. THOMAS: No.

MR. FOWLER: Or defense counsel—I should add that.

THE COURT: All right now I'm satisfied that you understand what you are doing. You are doing this voluntarily for reasons which seem sufficient to you.

Absent a motion for new trial, trial errors are not preserved for review on appeal, *State v. Malloyd*, 394 S.W.2d 405 (Mo. 1965), and appellant's contentions may be considered only if there is plain error affecting substantial rights from which manifest injustice or miscarriage of justice has resulted, Rule 29.12(b).

Appellant contends that his confession of June 7, 1977, should have been excluded because he had not been "clearly and unequivocally advised of his *Miranda* rights and therefore he could not have effectively waived those rights." More specifically, he argues that any advice of rights given him was neutralized by the following statement made by the sheriff before the second questioning:

> Okay, now, let's start again at the bridge. First of all, I'd like to say to you that, uh, there will not be any deals made by me or our office or anybody else in connection with the Frazier case. Anything that you do will have to be done through your attorney and anything that you do tell us I'm sure will be in your favor but as far as making any deals, there's none to be made. I want you to understand all these things before we ever start.

Appellant argues he was confused by being warned on the one hand that anything he said would be used against him then immediately thereafter being told that anything he said would be in his favor. The record shows that defendant was read his rights and was given no promises of leniency or bargains, after which he gave a forty-five minute statement. After it was discovered that the tape recorder was not functioning, the rights were read again and the allegedly confusing statement was made by the sheriff. Defendant's second statement was essentially the same as the first. Under such circumstances, there is little likelihood of confusion, and no demonstration of manifest injustice necessary to relief under Rule 29.12(b).

Appellant contends that, even if the *Miranda* requirements were fulfilled, under the totality of the circumstances, including alleged delay in appointment of counsel, the confession was not voluntary: "the circumstances involved in this case operated to create such confusion and uncertainty in the mind of Appellant that he was deprived of free choice and as a result was coerced into involuntarily making the incriminating statement of June 7, 1977."

The State has the burden of showing by a preponderance of the evidence that the defendant's statements made while in custody were voluntarily given. *State v. Olds*, 569 S.W.2d 745 (Mo. banc 1978). Absent a showing of special circumstances, the State need only make a prima facie showing of voluntariness. *State v. Nolan*, 423 S.W.2d 815 (Mo.1968). The State established both at the suppression hearing and at trial that it was defendant who requested the interview, that he was given his rights twice during the statement, that he signed a written statement waiving those rights including right to presence of counsel, that he was not subjected to any physical or mental coercion or abused in any way, and that he willingly gave the same statement twice. Appellant has demonstrated no error, let alone plain error.

Appellant charges that eight of the twelve jurors should have been excluded for cause because they had some prior knowledge of the case through the media, and three of the eight had discussed the case with family or friends. When asked, none of them expressed a prior opinion as to the guilt or innocence of defendant or an inability to apply the facts as found to the law as instructed.

A determination by the trial judge of the qualifications of a venireman necessarily involves an exercise of discretion based on an observation of the demeanor of the venireman and, in the light of that observation, an evaluation and interpretation of his answers as they relate to whether he would be fair and impartial if chosen as a juror. Because the trial court is in a better position to make that determination than is an appellate court on the record, the trial court is accorded discretion in determining the qualifications of a venireman

and its decision will not be disturbed except for an abuse of discretion. *State v. Cuckovich*, 485 S.W.2d 16 (Mo. banc 1972). A review of the record shows that for none of the eight questioned jurors was any prejudice or bias shown.

Citing *State v. Holliman*, 529 S.W.2d 932 (Mo.App.1975), appellant insists that the trial court had an affirmative duty to conduct "a thorough examination of the potential jurors to insure that partiality [did] not exist." In that case the trial court said it was not sure that a particular venireman questioned for cause was unbiased but that it was bound by the venireman's statement that he could be fair. The court of appeals reversed and held that where the transcript revealed that the trial court recognized some possible problem with the impartiality of the challenged juror, it was not bound by the juror's own assessment but was required to make an independent factual determination.

In this case, nothing in the transcript reveals bias on the part of any of the eight. Defendant's attorney, not shackled in any way by the trial court, demonstrated no bias on the part of any juror and cannot now argue that the trial court abused its discretion in failing to demonstrate it for him. *See, State v. Morrison*, 557 S.W.2d 445[2] (Mo. banc 1977). Nothing in this case indicates that the trial court failed to make an independent determination based upon questions asked of the jurors, their responses thereto and the court's observation of their demeanor.

Appellant charges error in impaneling the jury because the jury selection statute then governing systematically excluded women and that his panel was therefore not representative of the community.

■■ To invalidate a jury verdict on the basis that the jury was improperly impaneled, there must be a showing of unconstitutional discrimination arising out of systematic exclusion. *State v. Robinson*, 484 S.W.2d 186 (Mo.1972). Appellant points to no evidence in support of his charge. His assertion, first made on appeal, is not sufficient. The record contains nothing with respect to the number of women available for service in the county, the number selected, or the number who may have chosen not to serve. Defendant made no motion to quash the panel, did not object to the jury before or at trial, and made no motion for new trial. It would be speculation to say this jury was not representative of the community.

Accordingly, the judgment is affirmed.

All concur.