STATE of Missouri,
Plaintiff–Respondent,

v.

Melvin HUFFMAN, Defendant–Appellant.

No. 41076.

Missouri Court of Appeals,
Eastern District,
Division One.

Aug. 19, 1980.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Oct. 17, 1980.

Application to Transfer Denied
Dec. 15, 1980.

Robert C. Babione, Public Defender, Mary Louise Moran, Asst. Public Defender, St. Louis, for defendant--appellant.

John D. Ashcroft, Atty. Gen., Paul Robert Otto, Asst. Atty. Gen., Jefferson City, George Peach, Circuit Atty., St. Louis, for plaintiff respondent.

WEIER, Judge.

Defendant Melvin Huffman after a trial before a jury on a charge of capital murder was found guilty of second degree murder and his punishment was assessed by the jury at forty years imprisonment. The death of the victim occurred on July 30, 1977. After a day engaged principally in drinking at taverns, Huffman and his friend Michael Ford picked up a hitchhiker in the City of St. Louis somewhere about 6:30 p. m. The hitchhiker, later identified as Larry Sansoucie, started talking and said something that irritated Huffman. Upon the failure of Sansoucie to stop, Huffman struck Sansoucie who then got out of Huffman's automobile and ran. He was captured and placed back in the automobile. Within a short time but at a different location a similar incident occurred in which Sansoucie again was observed to run from the car and then be dragged back into it. Thereafter in the area of 3900 South First Street in the City of St. Louis near the Mississippi River where Huffman and his associate Michael Ford had transported the victim, Sansoucie again escaped and ran. Huffman and Ford pursued Sansoucie, recaptured him and proceeded to beat and kick him while he was down on the ground.

This occurred in an area where the land was open without buildings. Nearby there was a track for dune buggies. A person testing a dune buggy and two friends who were observing the operation of the vehicle saw the struggle and then observed that one of the individuals after obtaining a knife in Huffman's automobile returned and stabbed the victim. Both then dragged Sansoucie's body back to the automobile.

After placing the victim in the car, the defendant and Michael Ford drove to a well in Jefferson County. During the course of this trip Sansoucie kept sticking his foot out of a window and attempted to talk. Huffman stabbed the victim twice more after which he and Ford threw the body in the well.

During the course of the trial after the State had presented its evidence, the defendant called to the witness stand a number of character witnesses. Among these was a Keri Gay Simpson. Ms. Simpson worked as a secretary in the office of Crunden–Martin Manufacturing Company where defendant Melvin Huffman was employed. She knew him for a period of two years and was first acquainted when he was hired by the company. In laying a foundation for her testimony with respect to Huffman's character, she stated that she had never heard anyone discuss his character at the place where he was employed, but that there was never any complaint with regard to his conduct. She never discussed him with anyone. At the conclusion of her testimony, upon the request of the prosecutor, the witness's testimony was stricken and the jury was instructed to disregard it.

■ We do not find that the court abused its discretion in making its ruling with respect to the testimony of Ms. Simpson. She had worked as a secretary in the office of the company where defendant had worked out in the plant for a period of two years. She specifically stated that she never talked to anyone concerning his character. Furthermore, the people from the factory didn't come into the office and discuss other people in the plant. Her views concerning the appellant's character were personal. It was based on the fact that she never heard anything bad about him.

■ A claim by a witness that he has knowledge of the character of the person about whom he has testified is prima facie sufficient; but if the knowledge is questioned, then the witness must qualify by showing such acquaintance with the person, the community in which he has lived or the circles in which he has moved as to speak with authority of his character. It is not what the witness knows about the general conduct of the person about whom he testifies, but rather he should know the general reputation of this person in the neighborhood or among people with whom the witness associates for the character trait in question. A personal view of the witness as to the character of the accused is immaterial and not admissible. *State v. Antwine*, 506 S.W.2d 397, 399[2] (Mo.1974); *State v. Woods*, 428 S.W.2d 521, 523[1–3] (Mo.1968). This is not to mean that a fellow worker who has had occasion to work with the accused and his fellow employees for a substantial time cannot testify that the reputation of the accused was good even though he has not discussed the man's reputation with those that are acquainted with him. In such circumstances, negative evidence may be viewed as cogent evidence of a person's good character and reputation because in the absence of any discussion about character, it may reasonably be presumed that the person's reputation is good. *State v. Cavener*, 356 Mo. 602, 202 S.W.2d 869, 875[10, 11] (1947). Ms. Simpson never established that she was in a position where she might hear anything about the character reputation of the accused. She was a secretary who worked in an office of the company and not out in the factory where the accused worked. She specifically stated that she had never talked to anyone concerning the appellant's character and that the employees in the factory "don't come into the office and discuss the other people in the plant." The testimonies of nine other character witnesses who testified as to the defendant's good reputation were allowed in evidence by the court. The court's

ruling with regard to Ms. Simpson's testimony was justified by the record and was within the sound discretion of the judge. We rule against defendant on this point.

Defendant next contends that the trial court erroneously instructed the jury in the verdict–directing instructions on the basis that the jury could find the defendant guilty of the various descending forms of homicide if the defendant acted alone or with Michael Ford in the conduct hypothesized in the various instructions. Defendant bases this attack on the reason there was no substantial evidence that defendant acted with Michael Ford on the night of the incident prior to the time that Ford sought to dispose of the body. He attempts to point out that Ford was the one who first stabbed Sansoucie and there is no indication that this was done in concert with defendant Huffman. In answer to this we can only point out that according to the testimony of the principal witness for the State, Ford and defendant Huffman acted together in capturing Sansoucie each time he escaped and in beating and kicking him prior to his initial stabbing. Thereafter, they agreed on disposition of the body and were together when Sansoucie was driven to Jefferson County where he was thrown in the well. During that fatal journey Huffman stabbed Sansoucie several times. It is well–established that evidence fairly showing any form of affirmative participation in a crime is sufficient to support a conviction. A person may become liable as a principal by aiding or abetting another or by acting with another in the actual commission of the offense. And an instruction hypothesizing acting either alone or jointly with another person in such circumstances is proper. *State v. Johnson*, 510 S.W.2d 485, 490[10–12] (Mo.App.1974). This point is without merit and is denied.

Defendant's third charge of trial court error asserts the case should be reversed and remanded for a new trial because the prosecution failed to discharge its burden of proof by a preponderance of the evidence that the defendant intelligently and understandingly waived his rights during police interrogation. The State on the other hand submits that a prima facie case of voluntariness was established by the record; that the State need only show that at all stages of the interrogation, the accused was informed of his constitutional rights; that he was capable of understanding these rights and that no physical force, threats or coercive tactics were used to obtain the confession. If this be true, then the State has met the standards which are required to protect defendant's constitutional rights. *State v. Crowley*, 571 S.W.2d 460, 464[8, 10] (Mo.App.1978).

The record reflects that from the time Huffman was arrested on July 30, 1977, through the various stages of the proceeding including the taking of his video–taped statement, he was advised of his rights prior to any interrogation. The recording of the video–tape interview and statement indicated that the officer who interrogated him repeated all of the constitutional rights to which the accused was entitled and asked Huffman each time if he understood the one about which he had just been advised. His response each time was affirmative. When asked as whether he wished an attorney present he stated that he did not. Furthermore, he told the detective that he wanted to make a statement. The statement in narrative form detailed the events of the afternoon without any questions being asked. In addition to the video–taped statement, he had talked to his girl friend Vickie Jo Potter alone and she informed the police (and so testified later) that Huffman had told her he had stabbed Sansoucie twice at the well near Arnold Missouri.

It is the State's burden to show by a preponderance of the evidence that a statement of the defendant has been voluntarily made while he was in custody. Absent a showing of special circumstances, the State need only make a prima facie showing of voluntariness. *State v. Thomas*, 596 S.W.2d 409, 412[3, 4] (Mo. banc 1980). Here the testimony of the police officers who took the defendant's statement was sufficient to establish a prima facie case that the confession was voluntarily and knowingly

made. If there is any conflict with regard to the testimony regarding voluntariness, admission of the confession into evidence is a matter of discretion with deference being paid to the trial court's ruling on the credibility of the witness unless manifest error has been committed. *State v. Flowers*, 592 S.W.2d 167, 170[6] (Mo. banc 1979); *see also State v. Higgins*, 592 S.W.2d 151, 157[6] (Mo. banc 1979).

 Defendant attempts to characterize as a promise of leniency a certain statement made by one of the police officers to appellant during interrogation to the effect that "if the man is alive, it will help if we find him." We cannot see that this is a promise to defendant that he will receive a lighter sentence or will receive better treatment at the hands of the court and the police officers if he would confess. It could well be construed as an attempt to obtain information in order to save the victim's life in the event he was still alive and in need of medical treatment. Certainly under the circumstances with all of the warnings that were made at the time, it cannot be construed as a promise of leniency in order to obtain the statement. *See State v. Thomas, supra* at 412[2]. The trial court did not err when it overruled appellant's motion to suppress.

We turn now to the forth contention of trial error directed toward the jury selection procedures used in this case. Defendant's contention is apparently directed toward an alleged systematic exclusion of women. To invalidate a jury verdict on this basis, however, there must be a showing of unconstitutional discrimination arising out of systematic exclusion and there must be evidence adduced to support this charge. An assertion first made on appeal is not sufficient. There is no information given with respect to the number of women available for service in the City of St. Louis where this case was tried, the number selected or the number who may have chosen not to serve. Defendant made no motion to quash the panel, did not object to the jury before or at trial, and did not include this as a grounds for a new trial in his after-trial motion. We could only indulge in speculation to say that the jury was not representative of the community. *State v. Thomas, supra* at 413[8, 9].

The judgment is affirmed.

STEWART, P. J., and SNYDER, J., concur.