**STATE of Missouri, Plaintiff–Respondent,**

v.

**John ENGLISH, Defendant–Appellant.**

**No. 57196.**

Missouri Court of Appeals, Eastern District, Division Three.

Aug. 28, 1990.

---

Michael L. Lyons, St. Louis, for defendant-appellant.

William L. Webster, Atty. Gen., Andrea K. Spillars, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

SATZ, Presiding Judge.

Defendant John English appeals his conviction by a jury of murder, second degree, § 565.021 RSMo 1986. The trial court sentenced defendant to a prison term of twelve years. We affirm.

Only a brief recitation of the facts is necessary since, on appeal, defendant does not contest the sufficiency of the evidence supporting his conviction. The 18–year old victim, Fenton Bailey, lived with his family in a house owned and also occupied by defendant, who was 75 years old at the time of the murder. Defendant had instituted proceedings to evict the victim and his family from defendant's house. On the day of the murder, the victim returned to defendant's house by automobile. Defendant confronted the victim while the victim was still in the car. When the victim emerged from the car, the defendant shot and killed him.

On appeal, defendant, who is black, argues the trial court erred in denying his motion to quash the jury panel on the grounds that the prosecutor used his peremptory challenges to remove two black veniremen solely because of their race.

The state's privilege to exercise peremptory challenges in a criminal case is subject to the dictates of the Equal Protection Clause of the Fourteenth Amendment, United States Constitution. *Batson v. Kentucky*, 476 U.S. 79, 90, 106 S.Ct. 1712, 1719, 90 L.Ed.2d 69, 83 (1986). "[T]he Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant." *Id.* The Missouri Supreme Court has directed our trial courts "to consider the prosecutor's explanations as part of the process of determining whether a defendant has established a prima facie case of racially discriminatory use of peremptory challenges." *State v. Antwine*, 743 S.W.2d 51, 64 (Mo. banc 1987). Defendant argues the trial court erred in denying his *Batson* motion without requiring the prosecutor to state neutral reasons for striking black veniremen. We do not address this contention on its merits because it has not been properly preserved for review.

In order to give trial courts the opportunity to correct their own mistakes, any alleged error must be pointedly objected to at trial. *See State v. McBride*, 685 S.W.2d 953, 955 (Mo.App.1985). Neither at trial nor in his motion for a new trial did defendant object to the denial of his *Batson* motion on the grounds that the trial court failed to require the prosecutor to explain the reasons for his peremptory challenges to the black veniremen. Both at trial and in his motion for a new trial, defendant made the general statement that the prosecutor had exhibited purposeful discrimination in the exercise of his peremptory challenges defendant now complains about an appeal. This did not alert the trial court to the error.

■ Aside from being insufficiently specific at trial, defendant's contention, that the trial court erred in refusing to require the prosecutor to explain his peremptory strikes of black veniremen, was also untimely. Alleged trial error must be brought to the trial court's attention at the earliest possible opportunity. *State v. Newman*, 699 S.W.2d 29, 32 (Mo.App.1985). The appropriate time to raise a *Batson* motion is "after the State has made, and before the defendant makes, peremptory strikes." *State v. Price*, 763 S.W.2d 286, 289 N. 3 (Mo.App.1988). A *Batson* Motion is waived unless timely raised. *State v. Smith*, 791 S.W.2d 744, 747–748 (Mo.App. E.D., 1990); *State v. Lawrence*, 791 S.W.2d 729, 731 (Mo.App. E.D.1990).

As we have recently explained,

there simply is no justification for defense counsel to wait until the remaining venirepersons are discharged to challenge the state's peremptory strikes. If defense counsel does wait until the venire panel is discharged and the challenge is sustained, then the jury selection process must start anew, and an additional venire panel must be called. This simply delays justice, and, in those jurisdictions where an additional venire is not readily available, the delay can be substantial.

*Smith, supra,* at 747.

In the present case, defendant did not make his *Batson* motion until after the jury panel had been discharged. Defendant thereby waived his right to challenge the jury panel on *Batson* grounds.

■ Defendant has not requested that we review this point for plain error, as we are authorized, but not required, to do by Rule 30.20. We do so *ex gratia.* The record before us does not show the trial court committed plain error in denying defendant's *Batson* motion.

Our courts have identified certain circumstances which generally make a claim of purposeful discrimination in the use of peremptory challenges implausible. For instance, a prosecutor may have little incentive to use his peremptory challenges for racist purposes when both the defendant and the victim are black. E.g., *State v. Muhammad*, 757 S.W.2d 641, 642 (Mo.App. 1988). Similarly, a close correlation between the number of blacks on the jury panel and the petit jury also detracts from the credibility of a claim of purposeful discrimination by the prosecution. *See, e.g.*

*State v. Vincent,* 755 S.W.2d 400, 403 (Mo. App.1988).

In the present case, both defendant and victim were black, and the percentage of blacks on the jury panel, 4 of 27, or 14.8 percent, approximated the percentage of blacks on the petit jury, 2 of 12, or 16.6 percent. We therefore find no plain error in the trial court's failure to require the prosecutor to explain why he peremptorily struck two black veniremen.

Defendant next contends that the trial court erred in excluding testimony from one of his witnesses, Ms. Evelyn Hanneman. Defendant characterizes the excluded portion of this witness' testimony as "negative evidence of [defendant's] reputation."

A criminal defendant may present evidence concerning his character from witnesses competent to testify to the defendant's reputation in his community; a witness' personal opinion about the defendant's character is inadmissible. *State v. Huffman,* 607 S.W.2d 702, 704 (Mo.App. 1980). Like any other witness, a reputation witness must have personal knowledge of the subject matter of his proposed testimony. *State v. Dixon,* 420 S.W.2d 267, 271 (Mo.1967). "A claim by a witness that he has personal knowledge of the character of the [defendant] ... is prima facie sufficient; if the knowledge is questioned, then the witness must be qualified by showing such acquaintance with the [defendant], the community in which [the defendant] has lived or the circles in which [the defendant] has moved as to speak with authority of [the defendant's] character." *Huffman,* 607 S.W.2d at 704.

■ A witness knowledgeable of a defendant's reputation in his community must be permitted to testify that he has heard nothing negative about the defendant because "in the absence of any [disparaging] discussion about character it may reasonably be presumed that the [defendant's] reputation is good." *State v. Allen,* 641 S.W.2d 471, 473 (Mo.App.1982) However, a witness may not testify based merely upon her personal opinion that a defendant had

done nothing to warrant a bad reputation. *Huffman,* 607 S.W.2d at 704.

■ Ms. Hanneman exhibited no personal knowledge of defendant's reputation. Defendant's trial counsel twice attempted to establish this witness' personal knowledge of defendant's reputation. Ms. Hanneman first replied, "we've never heard anything bad. I mean, we never questioned anybody ..."; she later stated, "he has no problems in the community as far as we're concerned." Neither response demonstrated that the witness had familiarity with defendant's reputation in his community. It was proper for the trial court to exclude evidence of Ms. Hanneman's personal opinion regarding defendant's reputation.

■ Defendant also argues that the trial court erred in refusing to admit into evidence a court file concerning the eviction action which defendant had brought against one John Bailey, apparently a member of the victim's family, who also occupied defendant's house. We disagree.

Trial courts have broad discretion in determining the relevance of evidence, and their rulings may be reversed only if there has been an abuse of that discretion. *State v. Brown,* 718 S.W.2d 493 (Mo. banc. 1986). In the present case, the trial court ruled that the court file in question was not relevant because it concerned only the relationship between defendant and John Bailey, and not the relationship between defendant and the victim. Since defendant made no offer of proof, there is no indication that the court file from the eviction case contained any information directly relating to any animosity between defendant and the victim. The trial court stated that defendant was free to present evidence concerning the effect of the eviction proceedings on his relationship with the victim, in order to support defendant's claim of self-defense. Defendant did in fact testify that the victim had threatened him as a result of the eviction proceedings. The trial court thus did not err in excluding irrelevant evidence from the court file in the eviction

case concerning any threats which John Bailey may have made against defendant.

Judgment affirmed.

SMITH and GRIMM, JJ., concur.